UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Pollyann Sorcan, | Case No. 23-cv-1174 (WMW/LIB) |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |
| Rock Ridge School District (Independent School District No. 2909); and Bill Addy Board Chair, *in his official capacity as Chair, and any successor*, | |
| Defendants. | |

---

Defendants Rock Ridge School District and Bill Addy (collectively "Defendants") have moved to dismiss Pollyann Sorcan's claims. (Dkt. 12.) For the reasons addressed below, the Court grants Defendants' motion to dismiss.

## BACKGROUND

Sorcan is a member of the School Board ("School Board") at Independent School District No. 2909, Rock Ridge ("District"). Addy is the Board Chair. During her tenure as a member of the School Board, Sorcan repeatedly questioned and commented on the District's business, supported and opposed strategies and actions related to the District's business, and advocated for positions such as fiscal discipline.

On August 9, 2021, the School Board issued a censure against Sorcan for three specified reasons: (1) violating District policy and failing to take direction from the School Board Chair, (2) failing to respect data privacy laws under District Policies 205 and 406, and (3) acting against the mission of the District and undermining School Board

committees. Sorcan alleges that Defendants censured her in retaliation for her political advocacy, support of the community, and attempts to be informed on relevant issues. The censure purported to: (1) remove Sorcan from School Board committee assignments until a date specified by the School Board and (2) bar Sorcan from attending committee meetings. The censure was lifted on February 13, 2023. During the censure period, Sorcan continued to attend committee meetings to which she was not assigned.

Sorcan commenced this action on April 26, 2023, alleging that the imposed censure and the School Board's misinterpretation of Minnesota's Open Meeting Law violated her First Amendment right to free speech and expression. Defendants move the Court to dismiss Sorcan's claims on alternative grounds. Defendants maintain that Sorcan fails to state a claim on which relief can be granted. Alternatively, Defendants contend that, if Sorcan has sufficiently pled a First Amendment violation, Defendants are legislatively immune. Because this Court finds legislative immunity applies, it need not analyze whether Sorcan sufficiently pled a First Amendment violation.

## ANALYSIS

To survive a motion to dismiss, a complaint must allege facts that, if accepted as true, establish a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also* Fed. R. Civ. P. 12(b)(6). When evaluating a motion to dismiss, the district court must accept as true the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555, 570 (2007). A plaintiff may not rely on, nor may a district court consider, legal conclusions couched as factual allegations. *See Iqbal*, 556 U.S. at 678-79.

## I.    Legislative Immunity

Defendants contend that the District and Addy are legislatively immune. Sorcan maintains that neither the District nor Addy can claim the privilege of legislative immunity because the District is liable under *Monell*, and Addy, a local level official being sued in his official capacity, is liable under *Umbehr*. Defendants disagree, arguing that Sorcan fails to allege liability under *Monell* and that local level officials sued in their official capacity, as Addy is here, can claim legislative immunity.

### A.    Bill Addy's Immunity

In *Tenney v. Brandhove*, the Supreme Court held that state legislators are absolutely immune from suit under Section 1983 for actions "in the sphere of legitimate legislative activity." 341 U.S. 367, 376 (1951). The Supreme Court subsequently extended this immunity to include regional legislators. *Lake Country Ests., Inc. v. Tahoe Reg'l Plan. Agency*, 440 U.S. 391, 406 (1979). In 1998, the Supreme Court recognized that local officials also have the privilege of legislative immunity for their legislative activities. *Bogan v. Scott-Harris*, 523 U.S. 44, 46 (1998). The Court reasoned that the rationales supporting legislative immunity for legislators at federal, state and regional levels "apply with equal force to local legislators." *Id.* at 52. Specifically, the Court determined that "[r]egardless of the level of government, the exercise of legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability," "the time and energy required to defend against a lawsuit are of particular concern at the local level,

where the part-time citizen-legislator remains commonplace," and "the threat of liability may significantly deter service in local government, where prestige and pecuniary rewards may pale in comparison to the threat of civil liability." *Id.* at 52. The court also observed that local level governments have two features that provide deterrents to legislative abuse that further warrant extending the privilege of legislative immunity: (1) "Municipalities themselves can be held liable for constitutional violations, whereas States and the Federal Government are often protected by sovereign immunity," and (2) the electoral process "applies with equal force at the local level, where legislators are often more closely responsible to the electorate." *Id.* at 53.

The preceding cases address officials who were sued in their individual capacity. But the question remained as to whether government officials sued in their *official capacity* are legislatively immune for actions taken in their legislative capacity. The Supreme Court addressed this question as it applies to state government officials and held that state officials sued in their official capacity are legislatively immune. *Supreme Ct. of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 725-26, 734 (1980); *see also Church v. Missouri*, 913 F.3d 736, 754 n.3 (8th Cir. 2019) (applying *Consumers Union* and finding the state officials sued in their official capacity were legislatively immune from suit). However, neither the Supreme Court nor the Eighth Circuit has explicitly addressed whether legislative immunity extends to local level officials. Rather, the only guidance provided by the Supreme Court is from a footnote in *Board of County Commissioners, Wabaunsee County, Kansas v. Umbehr*, 518 U.S. 668 (1996).

In *Umbehr*, an independent contractor sued the Board of County Commissioners and individual Board members in their individual and official capacities, alleging they had violated his First Amendment right to free speech. *Id.* The Supreme Court addressed whether, and to what extent, the First Amendment protects independent contractors. *Id.* at 670. In doing so, the Supreme Court noted that the district court "held that the claims against the Board members in their individual capacities would be barred by qualified immunity," and the Tenth Circuit Court of Appeals affirmed the ruling on appeal. *Id.* at 672. Then in a footnote citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166 (1993), the Supreme Court observed that "[b]ecause only claims against the Board members in their official capacities are before us, and because immunity from suit under § 1983 extends to public servants only in their individual capacities, the legislative immunity claim is moot." *Umbehr*, 518 U.S. at 677 n.* (internal citations ommitted). In *Leatherman*, however, the claims against both officials who had been sued in their official capacity were dismissed by the district court, and the question of their immunity was not at issue on appeal.[1] Indeed, the cited portion in *Leatherman*

---

[1] The district court in *Leatherman* dismissed the officials, stating:
> In *Brandon v. Holt*, 469 U.S. 464 (1985), the Supreme Court made clear that an action brought under § 1983 against a police official in his official capacity is tantamount to an action against the public entity for which the official is alleged to act. Individual liability of the official cannot flow from a suit against him in his official capacity. A judgment against him in that capacity is the same as a judgment against the public entity he represents.

*Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 755 F. Supp. 726, 729 (N.D. Tex. 1991), aff'd, 954 F.2d 1054 (5th Cir. 1992), rev'd on other grounds, 507 U.S. 163 (1993) (internal citations omitted).

analyzes the municipalities' immunity, not the immunity of the local level officials sued in their official capacity. *Leatherman*, 507 U.S. at 166.

Because neither case directly addresses whether local level officials sued in their official capacity are legislatively immune for their legislative acts, this Court must look to the principles first articulated by the Supreme Court in extending legislative immunity to local officials in their individual capacity. And as addressed above, in *Bogan*, the rationales supporting legislative immunity for legislators at federal, state and regional levels "apply with equal force to local legislators." 523 U.S. at 52. Considering the Supreme Court's reasoning in *Bogan*, this Court identifies no reason to deprive local legislators of the privilege of legislative immunity. Additionally, Sorcan fails to present any distinguishing principle that warrants treating local legislators differently from their state counterparts. Therefore, this Court concludes that local officials sued in their official capacity may be legislatively immune when acting in their legislative capacity.

### i.    Acting in a Legislative Capacity

Sorcan argues that even if this Court were to find that legislative immunity applies to Addy in his official capacity, the School Board's issuance of a censure and punishment does not constitute a legislative act. Defendants disagree.

Officials may claim legislative immunity for their legislative activities. *See Bogan*, 523 U.S. at 44; *Church*, 913 F.3d at 736. To determine if an act is a legislative activity, courts consider the nature of the act, not the motive or intent of the official performing the act. *Young v. Mercer County Commission*, 849 F.3d 728, 733 (8th Cir. 2019) (noting that voting on a council resolution is a "quintessentially legislative" act that rests within the

bounds of legitimate legislative activity). The Eighth Circuit has found legislative acts to be acts akin to "legislative function[s] such as enacting ordinances or establishing municipal policy," *Brown v. Griesenauer*, 970 F.2d 431, 437 (8th Cir. 1992), or acts that "look[] to the future and change[] existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power." *Id.* (quoting *Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210, 226 (1908)). Examples of acts found to be "undoubtedly" legislative functions include the introduction of a budget and signing into law an ordinance. *Bogan*, 523 U.S. at 56.

Courts have also found a governing council's discipline of one of its members to be a "core legislative act" that does not pose a First Amendment concern. *Whitener v. McWatters*, 112 F.3d 740, 741 (4th Cir. 1997); *Callaway v. Hafeman*, 628 F. Supp. 1478, 1486-87 (W.D. Wis. 1986), *aff'd*, 832 F.2d 414 (7th Cir. 1987) (finding board actions indirectly terminating plaintiff's position by "formulation of [a] reorganization plan," were legislative acts); *see also Stepien v. Schaubert*, No. 08-cv-487A, 2010 WL 1875763, at *8 (W.D.N.Y. Feb. 23, 2010), *report and recommendation adopted*, No. 08-cv-487, 2010 WL 1875769 (W.D.N.Y. May 11, 2010), *aff'd*, 424 F. App'x 46 (2d Cir. 2011) (finding that removal proceedings constituted legislative action); *Wilson v. Marshall Indep. Sch. Dist.*, No. 2:09-cv-273, 2011 WL 1431410, at *5 (E.D. Tex. Feb. 1, 2011), *report and recommendation adopted sub nom. Wilson v. Marshall Indep. Sch. Dist*, No. 2:09-cv-273, 2011 WL 1431460 (E.D. Tex. Apr. 14, 2011) (finding a formal reprimand to be a legislative act).

Regarding Defendants' argument that self-disciplinary actions against board members are legislative acts, *Whitener* is instructive. In *Whitener*, the county board of supervisors disciplined a member for using inappropriate language while in his official role. 112 F.3d at 741. The disciplinary measure censured the member and stripped the member of his committee assignments for a period of one year. *Id.* The disciplined member alleged that the board violated his First Amendment rights by disciplining him for his speech. *Id.* The United States Court of Appeals for the Fourth Circuit disagreed and found that, regardless of a First Amendment violation, the board was legislatively immune if the disciplinary action was legislative in nature. *Id.* at 745. The Fourth Circuit drew a distinction between a legislature disciplining a member of a board versus terminating a board member's employment. *Id.* at 742. The latter was considered an administrative or executive act, and the former to be legislative in nature. *Id.* Accordingly, the board members were found to be immune because the censure was an exercise of their "self-disciplinary power," and, therefore, taken in a "legislative capacity." *Id.* at 744.

Board Chair Bill Addy and the School Board disciplined Sorcan, a School Board member, for the following reasons: violating District policy and failing to take direction from the Board Chair, failing to respect data privacy laws under District Policies 205 and 406, and acting against the mission of the District and undermining School Board committees. The School Board's "self-discipline" action censured Sorcan and removed her from School Board committees. Although the School Board's action is not quintessentially legislative and lacks the characteristics of a legislative act when compared to the examples above, such as the introduction of a budget or signing into law an ordinance,

8

the censure nonetheless was self-disciplinary and did not result in the termination of Sorcan's employment. Accordingly, this Court concludes that the act was legislative in nature. Because Addy acted in his legislative capacity, he is immune from suit.

### B.     The District's Immunity

The District may be held liable if Sorcan identifies a specific District policy or practice that is responsible for the alleged violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). It is the plaintiff's burden to identify a "persistent pattern of unconstitutional misconduct." *Furlow v. Belmar*, 52 F.4th 393, 406 (8th Cir. 2022); *see also Mitchell v. Kirchmeier*, 28 F.4th 888, 889 (8th Cir. 2022) (identifying "custom or usage" includes proof of "a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees") (quoting *Ware v. Jackson Cnty.*, 150 F.3d 873, 880 (8th Cir. 1998)); *see also Ware*, 150 F.3d at 881 (finding misconduct spanning several months was sufficient to show a pattern of unconstitutional conduct).

Sorcan fails to identify a persistent pattern of unconstitutional misconduct. Sorcan alleges that the imposed censure accompanied by a punishment is a custom, practice, or policy. However, a single imposition of a censure and punishment is far from a "persistent pattern." Additionally, Sorcan broadly alleges that Defendants' misinterpretation of the Minnesota Open Meeting Law created a practice and policy that violated her constitutional rights. However, the complaint fails to plead how the misinterpretation resulted in unconstitutional acts arising to a persistent pattern that constitutes a custom or practice with the force of law. Sorcan has failed to identify a specific unconstitutional policy or practice

that is responsible for the alleged violation. For this reason, the District is entitled to legislative immunity.

## CONCLUSION

Because Bill Addy and the Independent School District No. 2909, Rock Ridge, are legislatively immune, the Court need not determine whether Sorcan sufficiently pled a First Amendment claim. Therefore, Defendants' motion to dismiss is GRANTED.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED:**

1. Defendants' motion to dismiss, (Dkt. 12), is **GRANTED.**

2. This matter is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDIGNLY.**

Dated:  January 22, 2024                                           s/ Wilhelmina M. Wright
                                                                                    Wilhelmina M. Wright
                                                                                    United States District Judge