**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

POLLYANN SORCAN,

Plaintiff,

v.

ROCK RIDGE SCHOOL DISTRICT
(INDEPENDENT SCHOOL DISTRICT NO.
2909); and

BILL ADDY, *Board Chair, in his official*
*capacity as Chair, and any successor,*

Defendants.

Civil No. 23-1174 (JRT/LIB)

**MEMORANDUM OPINION AND ORDER**
**ON DEFENDANTS' MOTION TO DISMISS**

Austin M. Lysy, Douglas P. Seaton, **UPPER MIDWEST LAW CENTER**, 12600 Whitewater Drive, Suite 140, Minnetonka, MN 55343; Nicholas J. Nelson, **CROSS CASTLE**, 2140 Fourth Avenue North, Suite 140, Anoka, MN 55303, for Plaintiff.

Marcus B. Jardine & Trevor S. Helmers, **SQUIRES, WALDSPURGER, & MACE, P.A.**, 333 South Seventh Street, Suite 2800, Minneapolis, MN 55402, for Defendant.

Plaintiff Pollyann Sorcan served as a member of her local school board near Eveleth, Minnesota.  During her tenure, she regularly questioned and commented on district operations, supported various policy initiatives, and advocated for fiscal responsibility.  Sorcan alleges that Defendants retaliated against her for exercising her free speech rights under First Amendment rights by removing her from all committee assignments and preventing her from attending committee meetings.  She filed this action

under 42 U.S.C. § 1983 seeking nominal damages as well as injunctive and declaratory relief against the district and Bill Addy in his official capacity as chair of the board (collectively, "Defendants").  The Court granted Defendants' initial motion to dismiss,[1] but the Eighth Circuit reversed and remanded for further proceedings.[2]  Defendants have now filed a renewed motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), asserting that Plaintiff fails to state a claim upon which relief can be granted.  The Court will grant Defendants' motion.  Because Plaintiff does not plausibly allege a First Amendment retaliation claim, the Court will grant the motion as to the federal claims and will dismiss those claims with prejudice.  The Court will, however, dismiss Plaintiff's state law claims without prejudice, as it declines to exercise supplemental jurisdiction over those claims.  The state law claims are more properly filed in state court.

## BACKGROUND

### I.     BOARD STRUCTURE

The Independent School District 2909, Rock Ridge ("District") formed on July 1, 2020, as a result of a consolidation of other school districts.  (Am. Compl. ¶¶ 1, 50, July 15, 2023, Docket No. 11.)  The District's board has generally consisted of seven members

---

[1] *Sorcan v. Rock Ridge Sch. Dist.*, Civ No. 23-1174 (WMW/LIB), 2024 WL 230081 (D. Minn. Jan. 22, 2024).  This matter was reassigned to Judge Tunheim on March 13, 2025.  (Docket No. 37.)

[2] *Sorcan v. Rock Ridge Sch. Dist.*, 131 F.4th 646 (8th Cir. 2025).

and eighteen committees or liaisons.  (*Id.* ¶ 22.)  At the time of Sorcan's censure, the board consisted of nine members.  (*Id.* ¶ 32.)

Under District Policy 213.II.C., committees are "advisory in nature" and possess "only such authority as specified by the school board."  (*Id.* ¶ 27.)  Policy 213.IV.E. further provides that the "power of a committee or subcommittee of the school board is advisory only and is limited to making recommendations to the school board."  (Decl. of Marcus B. Jardine ("Jardine Decl.") ¶ 5, Ex. G, July 16, 2025, Docket No. 48.)[3]  Although the board receives committee recommendations for consideration, the board "has the duty to make all final decisions related to such reports or recommendations" under Policy 213.II.E.  (*Id.* [https://perma.cc/Q4NL-GFSA])  The District's Code of Ethics likewise states that, when dealing with the public, board members must "[i]nsist that committees be appointed to serve only in an advisory capacity to the school board."  (*Id.* [https://perma.cc/5EGF-NA7R] (Policy 209.II.C.6.))  It also emphasizes the advisory role of committees by requiring members to "[r]ecognize that school district business may be legally transacted only in an open meeting of the school board."  (*Id.* (Policy 209.II.F.4.))

The board chair has the power to appoint members of committees at their discretion.  (*Id.* (Policy 213.III.C.))  The policies do not establish a minimum or maximum

---

[3] Rock Ridge School Board Policies, https://rrps.org/district/school-board/policies/ [https://perma.cc/ZW4D-65NZ] (last visited Mar 10, 2026).  Earlier in this litigation, the Eighth Circuit took judicial notice of certain public records, including the District's board policies. *Sorcan*, 131 F.4th at 652 n.3.  The Court will cite to those materials throughout this opinion.

number of committee assignments.  (*Id.*)  At any given time, board members have held differing numbers of committee assignments.  (*See* Am. Compl. ¶ 25.)

On May 10, 2021, the board adopted a policy providing that only those board members listed on the committee assignment sheet could attend committee meetings.[4] On April 10, 2023, the board decided to allow other board members to attend committee meetings, provided that the meeting notice included the following statement: "No decisions will be made at this committee meeting; however, a quorum of the school board may be present."[5]

Despite the advisory and discretionary nature of board committees, Sorcan alleges that committee positions are important because much of the board's business is conducted through these committees.  (Am. Compl. ¶¶ 27–43.)  Committee members often receive information on topics that are not provided to the full board.  (*Id.* ¶ 29.)  Committees also exercise control over the board's broader agenda by choosing which topics to present at general board meetings.  (*Id.* ¶¶ 35–39.)  According to Sorcan, the

---

[4] Rock Ridge School Board – Regular Meeting 5/10/21, at 1:18:00–1:18:30, 1:27:00–1:27:30 (YouTube, May 10, 2021), https://www.youtube.com/watch?v=x9mlWhijupE.

[5] Rock Ridge Public Schools – ISD 2909 Meetings, Boardbook Premier, https://meetings.boardbook.org/Public/Organization/1613   [https://perma.cc/28DP-WDBW] (last visited Mar. 10, 2026); Rock Ridge School Board Meeting 4/10/23 at 6:00 PM, at 1:56:20–2:15:15 (YouTube, Apr. 10, 2023), https://www.youtube.com/watch?v=x6ZyWKgF5wE.

board often defers to the decisions of the committees by "rubber-stamping" committee recommendations.  (*Id.* ¶¶ 40–42.)

## II.   SORCAN'S BOARD SERVICE

Sorcan served as a member of the board of the District and its predecessors for over twenty years.  (*Id.* ¶ 1.)  As a board member, Sorcan represented her constituents by voting on and discussing school policy at board meetings.  (*Id.* ¶ 2.)

In August 2021, the board censured Sorcan.  (*Id.* ¶ 8.)  On Friday, August 6, 2021, the board circulated the agenda for a meeting that was to occur three days later.  (*Id.* ¶ 58.)  Item ten was labeled, "Closed Session for preliminary consideration of allegations against an individual who is subject to the Board's authority pursuant to Minn. Stat. § 13D.05, subd. 2(b)."  (*Id.* ¶ 59.)  The next item was titled, "Open Session: Possible action based on the topics discussed in closed session."  (*Id.* ¶ 60.)  Later that day, Sorcan contacted Superintendent Noel Schmidt to inquire whether the subject of the discipline had been notified about the proposed action, since that person would have the right to request that the meeting be public.  (*Id.* ¶ 61.)  The next day, Saturday, August 7, 2021, Schmidt replied, indicating that Sorcan was the subject of the proposed discipline.  (*Id.* ¶¶ 63–65.)

Plaintiff participated in the meeting on Monday, August 9, 2021.  (*Id.* ¶ 69.)  She moved to dismiss the censure and asserted her right to make the meeting public.  (*Id.* ¶¶ 69–70.)  The motion to dismiss was denied for lack of a second, but the board chair granted her request to make the session public.  (*Id.* ¶¶ 69–71.)  The board voted in favor

of the resolution to censure Sorcan, and the resolution was adopted.  (*Id.* ¶ 80.)  The

censure alleged that Sorcan had: (1) "failed to respect and follow the District's policies,

including the District's Rules of Order at Board meetings; (2) violated data privacy laws;

and (3) failed to carry out the District's mission and has actively undermined the District's

mission by refusing to work with the Board's Negotiation Committee on a contract,

undercutting the District's mission on social media, and more."  (*Id.* ¶ 81.)[6]

---

[6] The Resolution provided the following reasons for the censure:

> Ms. Sorcan has violated District policy and has failed to take direction from the Board Chair.  Ms. Sorcan has been unwilling to accept direction from the Board Chair, Stacey Sundquist, in Board meetings.  Ms. Sorcan tends to waste time with questions and non-tangential comments.  For example, Ms. Sorcan consistently brings up older topics the Board has already discussed and acted upon;
>
> Ms. Sorcan has failed to respect data privacy laws, District Policy 205 (Open and Closed Meetings), and District Policy 406 (Public and Private Personnel Data).  She revealed private data at a general Board meeting, including private data on personnel issues, which was previously discussed in closed session.  This conduct violates District policy and data privacy under the Minnesota Government Data Practices Act, which all public officials must follow; and
>
> Ms. Sorcan has at times acted against the mission of the District.  For example, she has been unwilling to accept the District's legal counsel's advice and has failed to support Board actions after action has been taken in Board meetings.  She has also undermined Board committees; for example, she was removed from the Negotiation Committee for refusing to sit down with the Committee to discuss a new contract.  Ms. Sorcan has also published misleading and inaccurate social media posts which contradict official Board actions and discussions.

(Am. Compl. ¶ 82 (cleaned up)).

By passing the resolution, the board removed Sorcan from all committees "until such time as the Board decides that Ms. Sorcan may again be assigned to committees." (*Id.* ¶ 9.)  Despite the censure, Sorcan attempted to attend committee meetings to which she was not assigned.  (*Id.* ¶¶ 46, 102, 108.)  For instance, on November 16, 2022, Sorcan tried to attend a public negotiation committee meeting concerning the Superintendent's contract.  (*Id.* ¶ 102.)  At this time, the board policy providing that only those board members listed on the committee assignment sheet could attend committee meetings was still in place.  *See supra* note 4.  Then-board chair Riordan locked the door as Sorcan attempted to enter.  (*Id.* ¶ 102.)  When another individual opened the door for Sorcan, Riordan initially blocked her entrance, but Sorcan eventually proceeded to the meeting. (*Id.* ¶¶ 103–04.)  While in the hallway between the door and the meeting room, Riordan told Sorcan that he believed her presence would create a quorum of the board and violate the Open Meeting Law ("OML").  (*Id.* ¶ 105.)  Following the meeting, Sorcan requested a copy of the Superintendent's contract, and Riordan refused.  (*Id.* ¶ 107.)  Sorcan contends that this refusal violated the OML.  (*Id.*)

On November 30, 2022, Sorcan again attempted to attend a committee meeting. (*Id.* ¶ 108.)  This meeting ended prematurely when board member Brandi Lautigar left the meeting because she believed that Sorcan's presence (in addition to those of the committee members) would violate the OML.  (*Id.*)

From August 9, 2021, to February 13, 2023, Sorcan was not assigned to any committees. (*Id.* ¶ 92.) In 2023, Sorcan requested six committee or liaison appointments. (*Id.* ¶ 24.) On February 13, 2023, board chair Addy assigned Sorcan to three committees and did not assign Sorcan as a liaison. (*Id.* ¶ 94.) The other six board members served in four to six committee or liaison positions. (*Id.* ¶¶ 25, 94.)

## III.    PROCEDURAL HISTORY

Sorcan initiated this action under 42 U.S.C. § 1983 on April 26, 2023, against the District and Addy in his official capacity as the current chair of the board. (Compl., Apr. 26, 2023, Docket No. 1.) She alleges that the censure and the board's misinterpretation of Minnesota's OML violated her free speech rights under the First Amendment of the United States Constitution and Article I, Section 3 of the Minnesota Constitution. (Am. Compl. ¶¶ 124–148.) Sorcan requests, among other things, nominal damages, declaratory relief, attorneys' fees, and injunctive relief mandating Defendants to rescind her censure and appoint her to a number of committees commensurate with her peers. (*Id.* at 28–29.)

On July 28, 2023, Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Defs.' First Mot. Dismiss, July 28, 2023, Docket No. 12.) The Court granted the motion, concluding that Addy was legislatively immune and that Sorcan failed to allege a "persistent pattern of unconstitutional misconduct" sufficient to state a *Monell*

claim against the District.[7] *Sorcan v. Rock Ridge Sch. Dist.*, Civ. No. 23-1174 (WMW/LIB), 2024 WL 2300081, at *4 (D. Minn. Jan. 22, 2024).  The Court declined to address whether Sorcan plausibly alleged a First Amendment claim.  *Id.*  Sorcan appealed.

On March 13, 2025, the Eighth Circuit reversed, holding that Addy was not entitled to legislative immunity because he was sued in his official capacity.  *Sorcan v. Rock Ridge Sch. Dist.*, 131 F.4th 646, 651 (8th Cir. 2025).  The Eighth Circuit also concluded that the district court erred as to Sorcan's *Monell* claim against the District.  *Id.*  Because Sorcan alleged that the District maintained "*an unwritten policy* of retaliating against individuals for their protected speech," she was not required to allege "a persistent pattern of unconstitutional misconduct."  *Id.*  Instead, it was sufficient to allege "that a constitutional violation resulted from authorized decisionmakers making 'a deliberate choice of a guiding principle or procedure.'"  *Id.*  (quoting *Corwin v. City of Independence*, 829 F.3d 695, 700 (8th Cir. 2016).  The Eighth Circuit, however, declined to decide in the first instance whether Sorcan plausibly alleged a First Amendment claim against Defendants.  *Id.* at 652 n.2.

Defendants have now filed a renewed motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  (Defs.' Renewed Mot. Dismiss, July 16, 2025, Docket No. 45.)

---

[7] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

**DISCUSSION**

**I.    STANDARD OF REVIEW**

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the Complaint as true to determine if the Complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court construes the complaint in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor. *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). Although the Court accepts the complaint's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

At the motion to dismiss stage, the Court may consider the allegations in the complaint as well as "those materials that are necessarily embraced by the pleadings." *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014). Additionally, the Court may consider matters of public record and exhibits attached to the pleadings, as long as those documents do not conflict with the Complaint. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). The Court may also consider any materials that are subject to judicial notice. *U.S. ex rel. Kraxberger v. Kan. City Power and Light Co.*, 756 F.3d 1075, 1083 (8th Cir. 2014).

## II.    FIRST AMENDMENT CLAIM

Defendants argue that the Amended Complaint fails to allege a First Amendment retaliation claim.  Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  42 U.S.C. § 1983.  Under *Monell*, a municipality is a "person" for purposes of § 1983.  *Monell v. Dep't Soc. Servs.*, 436 U.S. 658, 690 (1978).  "Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise."  *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013) (cleaned up).

To allege a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must allege that: "(1) [she] engaged in a protected activity, (2) the government official[s] took adverse action against [her] that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity."  *Bennie v. Munn*, 822 F.3d 392, 397 (8th Cir. 2016) (citation omitted).[8]

---

[8] Although Defendants do not concede that all of Plaintiff's conduct constituted protected activity, they acknowledge that at least some of it was protected.  (Defs.' Mem. Supp. Mot.

After careful review of the record that may be properly considered on a motion to dismiss, the Court concludes that Plaintiff fails to state a First Amendment retaliation claim.  The Court concludes that Sorcan has not plausibly alleged that her censure and removal from committee assignments is an adverse action.  As for Sorcan's exclusion from committee meetings, the Court concludes that she has plausibly alleged an adverse action but that she fails to allege that the action was made with a retaliatory motive. Accordingly, Plaintiff fails to state a First Amendment retaliation claim.  The Court will first address the adverse action element and then the retaliatory motive element.

### A.    Adverse Action

Sorcan contends that Defendants took two adverse actions against her: (1) censuring her and removing her from committee assignments, and (2) banning her from attending committee meetings.  (Am. Compl. ¶¶ 8–11.)  The Court will address each action in turn.

### 1.    Censure and Removal from Committee Assignments

Governmental bodies possess broad discretion to manage internal affairs. *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 475 (2022).  This discretion includes the power to censure one of their members.  *Id.*  But a censure may infringe on an individual's First Amendment rights if the censure "would chill a person of ordinary firmness from

---

Dismiss at 16 n.18, July 16, 2025, Docket No. 47.)  The Court's analysis will therefore focus on the second and third elements.

engaging in that activity."  *Zutz v. Nelson*, 601 F.3d 842, 849 (8th Cir. 2010) (citation

omitted).  Before turning to the facts of this case, the Court finds it helpful to address the

United States Supreme Court's decision in *Wilson* and the Eighth Circuit's decision in *Zutz*.

In *Wilson*, the Supreme Court considered whether the censure of an elected

member of the board of trustees of a community college constituted an adverse action

under the First Amendment after he publicly accused the board of violating its bylaws and

ethics rules.  *Wilson*, 595 U.S. at 471.  To determine whether the board's censure amount

to a materially adverse action, the Court considered "[l]ong settled and established

practice" as well as "contemporary doctrine" to confirm its historical considerations.  *Id.*

at 474, 477 (alteration in original).  A unanimous Court concluded that the board did not

violate the member's First Amendment rights because the censure itself was form of

speech by equal members of a deliberative body, concerned the conduct of another

member, and "did not prevent [plaintiff] from doing his job" nor did it "deny him any

privilege of office."  *Id.* at 479.  The Court also noted that the plaintiff was an elected

official, and in the United States, "we expect elected representatives to shoulder a degree

of criticism about their public service from their constituents and their peers—and to

continue exercising their free speech rights when the criticism comes."  *Id.* at 478.  *Wilson*,

however, only addressed verbal censures and did not contemplate the constitutionality

of censures that include punishments.  *See id.* at 480, 482 ("[W]e do not address today

-13-

questions concerning legislative censures accompanied by punishments" such as "expulsion, exclusion, or any other form of punishment.").

In *Zutz v. Nelson,* plaintiffs, members of a watershed district board, suspected that the board was involved in various financial improprieties, which resulted in plaintiffs bringing an action alleging § 1983 violations and state law defamation claims. 601 F.3d at 845–46. After defendants filed motions to dismiss, plaintiffs sought leave to amend their complaint, seeking to include factual allegations to support their First Amendment retaliation claim. *Id.* at 847. Plaintiffs sought to include allegations that one plaintiff had been unlawfully censured and that both plaintiffs were unlawfully denied appointment to certain committees, barred from signing checks on the board's behalf, and prohibited from renting property from the board. *Id.* The Eighth Circuit affirmed the district court's denial of plaintiffs' motion for leave to amend on futility grounds, explaining that "[w]e have doubts as to whether these added factual allegations state constitutional deprivations sufficient to chill a person of ordinary firmness." *Id.* at 851.

In light of *Wilson* and *Zutz*, the Court concludes that Sorcan's censure and removal from committees does not constitute a material adverse action for at least **two** reasons. **First,** removal from committee appointments is among the most common forms of internal discipline used by political bodies. *See Temple v. Lower Elkorn Nat. Res. Dist.*, Civ. No. 4:23-3198, 2023 WL 8934916, at *5 (D. Neb. Dec. 27, 2023) (noting that "removing elected officials from committee assignments is a common sanction"). In fact, one court

-14-

in this District has dismissed First Amendment retaliation claims at the Rule 12 stage based on sanctions far more severe than those imposed here. *See Kleis v. City of Becker*, Civ. No. 16-1005, 2016 WL 4007573 (D. Minn. July 26, 2016).

In *Kleis,* the city council censured its mayor twice after he made comments critical of the city's golf course. *Id.* at *1. The first censure prohibited Kleis from contacting certain individuals, discussing golf course matters except with specified officials, participating in employment decisions involving city employees, and serving on the golf committee. *Id.* The second censure imposed other restrictions. *Id.* at *2. It limited Kleis's contact with certain individuals unless another council member was present, barred him from calling city staff, required him to copy the Mayor pro tem on communications and data requests to staff, directed that data requests be submitted in writing in advance of board meetings, and prohibited him from raising employment concerns during public meetings. *Id.* Kleis alleged that the board censured him in retaliation in violation of his First Amendment rights. Despite these substantial restrictions, the court dismissed the First Amendment retaliation claim, concluding that Kleis failed to "plausibly allege[] that the censures against him 'would chill a person of ordinary firmness' from exercising his First Amendment rights." *Id.* at *3 (citing *Zutz*, 601 F.3d at 849). The sanctions imposed

on Sorcan do not approach the severity of those upheld in *Kleis*, underscoring that her allegations fail to establish a material adverse action.[9]

**Second**, Sorcan's removal from committee assignments did not prevent her from performing her duties or deprive her of any privilege of office because the committees are purely advisory. *See Wilson*, 595 U.S. at 479; *Temple*, 2023 WL 8934916, at *5–6 (concluding that suspension from committee assignments was not a materially adverse action under the First Amendment because the committees were "advisory in nature"). Sorcan's own pleading concedes that committees are "advisory in nature" and possess "only such authority as specified by the school board." (Am. Compl. ¶ 27.) Board Policy 213.IV.E likewise provides that committees are "advisory only" and may issue recommendations only. Although the board may consider those recommendations, Policy 213.II.E makes clear that the board "has the duty to make all final decisions related

---

[9] Some sanctions may rise to the level of a material adverse action, such as those imposed in *Boquist v. Courtney*, 32 F.4th 764 (9th Cir. 2022). The sanctions in *Boquist* included a prohibition on entering the state capitol unless Boquist gave notice twelve hours before entering. *Id.* at 773. The Ninth Circuit concluded that 12-hour notice rule constituted an adverse action because it removed an authority Boquist enjoyed by virtue of his popular election and prevented him from doing his job. *Id.* at 783.

The circumstances here are markedly different. Committee assignments are not powers guaranteed by virtue of Sorcan's elected position. Nor were they essential to carrying out her core responsibilities. By her own account, the fundamental functions of her role were advocating for her constituents and voting at board meetings—activities she remained fully able to perform. Unlike the restriction in *Boquist*, which erected a concrete barrier to the performance of official duties, Sorcan's removal from committee assignments left her with the full authority of her office intact. For that reason, *Boquist* is distinguishable, and the sanctions imposed here do not constitute a material adverse action.

to such reports or recommendations."  Because the board retained the ultimate decision-making authority, Sorcan's censure did not prevent her from doing her job—attending board meetings, advocating on behalf of her constituents, and voting her conscience at board meetings.  *See Wilson*, 595 U.S. at 471.  Nor are committee appointments a privilege of office since the board chair has complete discretion to grant or deny committee requests.[10]

Because Sorcan retained all the rights and responsibilities of her elected office, and because the censure did not hinder her ability to carry out her official duties, she cannot plausibly allege a chilling effect.  Accordingly, Plaintiff fails to plausibly allege that her censure and removal from committee assignments constituted an adverse action.  Because the Court concludes that the board's censure and subsequent removal from

---

[10] Plaintiff argues that she has a de facto right to serve on committees.  (*See* Am. Compl. ¶ 21.)  That argument fails because board policy and Plaintiff's own allegation make clear that committees exercise no final decision-making authority.  As purely advisory bodies, they are not essential to the duties of board members, who remain free to advocate their positions, question committee recommendations, and vote in accordance with their constituents' interests at full board meetings.  To support her claimed entitlement, Sorcan points to a single instance in which she asserts that a committee exercised final decision-making authority—when Rock Ridge boys' hockey team changed its class designation from class A to AA.  (*See id.* ¶ 28.)  But the undisputed public record demonstrates that the superintendent—not a committee—made that decision.  *See* Rock Ridge School Board Meeting 2/27/23 at 6:00 PM, at 22:00–31:30 (YouTube, Feb. 27, 2023), https://www.youtube.com/watch?v=fMbwLnbu4vk.  Thus, Plaintiff fails to plausibly allege that committees exercise final-decision making authority.  Although the Court must view the facts in the light most favorable to Sorcan at this stage, it need not accept allegations that are plainly contradicted by video evidence, as well as those subject to judicial notice.  *See Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019) (noting that, when deciding a motion to dismiss, there is no need to adopt plaintiff's version of the facts if it is "blatantly contradicted" by video evidence).

committee assignments did not constitute an adverse action, the Court will not address whether it was motivated by retaliation.

### 2.    Committee-Meeting Attendance Ban

On May 10, 2021, the board implemented a policy stating that committee meetings shall be attended only by the members listed on the committee assignment sheets.  On April 10, 2023, the board revised this policy to allow other members to attend committee meetings, as long as the meeting notice included a disclaimer.  The notice read: "No decisions will be made at this committee meeting; however, a quorum of the school board may be present."[11]

In general, members of the public have a First Amendment right to attend government meetings "open to public participation."  *Lee v. Driscoll*, 871 F.3d 581, 585 (8th Cir. 2017) (citing *City of Madison, Joint Sch. Dist. No. 8 v. Wisc. Emp. Rels. Comm'n*, 429 U.S. 167, 175–76 (1976)).  However, "there is no First Amendment right to participate in a non-public government meeting as a member of the public."  *Id.* at 585–86.

Minnesota's OML requires school board meetings to be open to the public.  Minn. Stat. § 13D.01, subd. 1(b)(1).  "Meetings" are "those gatherings of a quorum or more members of the governing body . . . at which members discuss, decide, or receive

---

[11]    Rock  Ridge  Public  Schools  –  ISD  2909  Meetings,  Boardbook  Premier, https://meetings.boardbook.org/Public/Organization/1613    [https://perma.cc/28DP-WDBW] (last visited Mar. 10, 2026).

information as a group on issues relating to the official business of that governing body."  *Moberg v. Indep. Sch. Dist. No. 281*, 336 N.W.2d 510, 518 (Minn. 1983).

Sorcan alleges the board misinterpreted Minnesota's OML and used that flawed interpretation as a pretext to punish her for exercising her free speech rights.  (*See, e.g.*, Am. Compl. ¶¶ 110–112, 121.)  In support, Sorcan relies on a Minnesota Attorney General Opinion, which opined that the OML is not violated when a board member attends an unnoticed committee meeting and creates a quorum so long as the member "merely observes an event or proceeding which is open on an equal basis to all members of the public."  Open Meeting Law: City Council: Committees, Minn. Op. Att'y Gen. 63a-5, at 3 (Aug. 28, 1996).[12]  Defendants respond that the board's policy—prohibiting members from attending committees on which they do not serve—was not imposed as a sanction for Sorcan's speech but rather was adopted to ensure compliance with the OML.

The Court concludes that Sorcan has adequately alleged an adverse action based on her exclusion from public committee meetings.[13]  On May 10, 2021, the board adopted a policy providing that committee meetings could be attended only by members listed on the committee assignment sheets.  She further alleges that several board members took

---

[12]    Available    at:    https://www.ag.state.mn.us/office/opinions/63a5-19960828.pdf [https://perma.cc/SJJ6-5BSA] (last visited Mar. 10, 2026).

[13] The Court does not find that the board's committee attendance policy was adopted as part of her censure.  The policy was instituted on May 10, 2021, and Sorcan was not censured until August 9, 2021.

informal steps to enforce this policy, including locking the building where meetings were held, physically blocking her entry, and canceling a meeting she attempted to attend.[14] These allegations plausibly allege that the committee attendance ban created a chilling effect. Unlike Sorcan's removal from committee assignments, the committee attendance ban prevented Sorcan from exercising rights she otherwise possessed as a member of the public, which supports the conclusion that Sorcan has plausibly alleged a material adverse action.

### B.    Retaliatory Motive

The third element of a First Amendment retaliation claim requires the adverse action be related to a retaliatory motive. *Bennie*, 822 F.3d at 397. The defendant's retaliatory motive must have been a "substantial factor" in the alleged retaliatory actions. *Kilpatrick v. King*, 499 F.3d 759, 767 (8th Cir. 2007). That is, "the retaliatory motive was a but-for cause of the harm." *Id.* "[A] plaintiff cannot recover if the defendant would have taken the same adverse action even in the absence of the improper motive." *Gearin v.*

---

[14] Defendants correctly point out that in *Kleis v. City of Becker*, the court observed that the absence of an enforcement mechanism reduced the likelihood that a censure constituted an adverse action. 2016 WL 4007573, at *3. However, unlike the censure in *Kleis,* Sorcan alleges that board members actively enforced the ban on committee attendance by locking the building door, blocking Sorcan in the hallway, and prematurely adjourning a meeting. These actions appear to have been taken to enforce the attendance ban and were based on board members' concerns that Sorcan's presence at the committee meeting would violate the OML. Taken together, Sorcan plausibly alleges that the attendance ban was backed by enforcement measures. That, in turn, supports the conclusion that the ban could have had a chilling effect.

-20-

*City of Maplewood*, 780 F. Supp. 2d 843, 856 (D. Minn. 2011) (citing *Osborne v. Grussing*, 477 F.3d 1002, 1006 (8th Cir. 2007)).

Defendants assert that the board passed the committee attendance ban in May 2021 to comply with the Minnesota OML. Sorcan alleges that the board instituted that attendance ban with the purpose of punishing Sorcan for her speech.

The Court finds that the Amended Complaint fails to plausibly allege that the board adopted the committee attendance ban with a retaliatory motive for two reasons.[15] **First**, the committee attendance ban was adopted by the board only after it was advised to so by Superintendent Schmidt and the District's attorney.[16]   The Superintendent recommended the policy in response to circulating rumors about possible school consolidation, the lack of books in the new elementary school, and alleged misuse of taxpayer funds. The stated purpose of the recommended policy was to ensure compliance with Minnesota's OML—not to target Sorcan. The Amended Complaint contains no factual allegations linking the policy to Sorcan's speech. The policy applied equally to all board members and did not single out Sorcan. Although Sorcan claims the stated reasons were pretextual, the Amended Complaint is void of factual allegations that

---

[15] As previously noted, because the Court concludes that the Board's censure and subsequent removal from committees did not constitute an adverse action, the Court will not address whether it was motivated by retaliation.

[16] Rock Ridge School Board – Regular Meeting 5/10/21, at 1:14:00–1:27:30 (YouTube, May 10, 2021), https://www.youtube.com/watch?v=x9mlWhijupE.

-21-

would allow the Court to draw the inference of pretext, and the Court is not required to accept conclusory allegations of pretext where the well-pleaded facts and public record show that the ban applied uniformly to all board members and was adopted upon the advice of the Superintendent and legal counsel.

**Second**, the timeline alleged in the Amended Complaint further undermines any plausible inference of retaliation.  The board adopted the attendance ban on May 10, 2021.  Sorcan was not censured until August 9, 2021—three months later.  Because the ban preceded the censure, the ban cannot reasonably be characterized as a retaliatory sanction flowing from the censure.  Moreover, the stated grounds for the censure were unrelated to Sorcan's committee attendance. (See Am. Compl. ¶ 82.)  This disconnect in both timing and subject matter further defeats any plausible inference of retaliatory motive.

Taken together, record shows that the board enacted a generally applicable policy based on advice from administrative and legal professionals and did so months before issuing any discipline.  These allegations do not plausibly support an inference that retaliation was a substantial factor or but-for cause of the implementation of committee attendance ban.  Accordingly, Sorcan fails to plausibly allege that Defendants "took the adverse action in retaliation for the protected activity."  *See Gearin*, 780 F. Supp. 2d at 856.

*     *     *

Accordingly, the Court concludes that Sorcan's censure and subsequent removal from committee assignment did not amount to an adverse action. While Sorcan plausibly alleges that the board's committee meeting attendance ban was an adverse action, she fails to allege that the action was done with a retaliatory motive. Accordingly, Sorcan fails to state a First Amendment retaliation claim.

### III.   MOOTNESS

The Eighth Circuit held that although Sorcan had been removed from the board after the Court dismissed her suit January 2024, her claims were not rendered moot because she requests nominal damages, in addition to other declaratory and injunctive relief. *Sorcan*, 131 F.4th at 650. The Eighth Circuit, however, declined to address whether Sorcan's requests for injunctive and declaratory relief were moot. *Id.* at 650 n.1. Defendants argue that Sorcan's request for injunctive and declaratory are moot because Sorcan is no longer on the board. Sorcan concedes that her injunctive relief requests are moot, but she argues that her declaratory relief claims are not because "Sorcan is considering running for re-election to the Board just a few months from now, and as part of her campaign she would want to tell voters that she would be able to serve on school board committees. (Pl.'s Opp. Mem. at 23, Aug. 8, 2025, Docket No. 54.)

The Court finds that even if Sorcan plausibly alleged a First Amendment retaliation claim, her requests for declaratory and injunctive relief are moot. Under the Declaratory Judgment Act, a "case of actual controversy" refers to any case and controversy justiciable under Article III of the United States Constitution. *Maytag Corp. v. Int'l Union, United*

*Auto., Aerospace & Agric. Implement Workers of Am.,* 687 F.3d 1076, 1081 (8th Cir. 2012). "There must be a concrete dispute between parties having adverse legal interests, and the declaratory judgment plaintiff must seek 'specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Id*. (quoting *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 241 (1937)).  Stated differently, the case-or-controversy requirement in declaratory judgment actions is satisfied if "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 (2007).

In her Amended Complaint, Sorcan asks the Court to (1) declare that Defendants' censure and removal from committee assignments violated her First Amendment rights; (2) order Defendants to rescind the censure and appoint her to a number of committees comparable to those of her peers; (3) declare that the District's interpretation of the Minnesota OML is improper and in violation of her First Amendment rights; (4) order that she be permitted to attend committee meetings on which she does not serve, to require Defendants to provide three days' notice of such meetings, and to enjoin the negotiations committee from caucusing privately during District-union negotiations; (5) and award nominal damages and attorneys' fees.  (Am. Compl. at 28–29.)

After careful review of Plaintiff's requested relief, the Court finds that Plaintiff's injunctive relief and declaratory relief claims are moot.  As for Plaintiff's request for

-24-

injunctive relief, these requests are moot because Sorcan no longer serves on the board, and Plaintiff conceded as much at oral argument.  In the absence of ongoing conduct to enjoin, there is no live controversy with respect to injunctive relief.  As for Plaintiff's declaratory relief claims, these claims are likewise moot.  To stave off mootness, Plaintiff relies solely on her intent to run for re-election and her desire to inform voters that she could serve on committees.  This stated intention, however, is insufficient to establish a case or controversy.  Currently, Sorcan is in the same position as any other individual eligible to run for a seat on the Rock Ridge school board.  If the Court were to conclude that Sorcan's declaratory claims remained justiciable, it would effectively permit any resident eligible for election to initiate litigation concerning issues that might affect their potential future board service.  Such claims would rest on speculation rather than an existing dispute and would amount to an advisory opinion, which Article III does not authorize.  Therefore, the Court concludes that Plaintiff's injunctive and declaratory relief claims are moot.

**CONCLUSION**

In sum, the Court concludes that Sorcan's censure and her removal from committee assignments did not constitute an adverse action.  Although she plausibly alleges that the board's ban on her attendance at committee meetings qualifies as an adverse action, she fails to allege facts showing that the ban was motivated by retaliation.  Sorcan therefore fails to state a viable First Amendment retaliation claim.  Even if Sorcan had adequately pled such a claim, her requests for declaratory and injunctive relief are

-25-

moot.  The Court will, therefore, dismiss all federal claims with prejudice and will decline to exercise supplemental jurisdiction over Sorcan's remaining state law claims under 28 U.S.C. § 1367(c).  *See Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 359 (8th Cir. 2011).

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Renewed Motion to Dismiss (Docket No. [45]) is **GRANTED, as follows**:

1. Plaintiff Pollyann Sorcan's claims under the First Amendment of the United States Constitution are **DISMISSED with prejudice**.

2. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims pursuant to 28 U.S.C. § 1367(c).  Therefore, Plaintiff's remaining state law claims are **DISMISSED without prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED: March 16, 2026                  _____/s/ John R. Tunheim_____
at Minneapolis, Minnesota.                      JOHN R. TUNHEIM
                                           United States District Judge